No. 17-16263

# In the

# United States Court of Appeals for the Ninth Circuit

---

DESIREE GILBERG,

*Plaintiff - Appellant,*

vs.

CALIFORNIA CHECK CASHING STORES, INC., et al.,

*Defendants - Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
HON. JOHN A. MENDEZ, DISTRICT JUDGE PRESIDING
DISTRICT COURT CASE NO. 2:15-CV-02309-JAM-AC

---

## APPELLANT'S OPENING BRIEF

---

**SETAREH LAW GROUP**
Shaun Setareh, SBN 204514
H. Scott Leviant, SBN 200834
Thomas Segal, SBN 222791
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone:    (310) 888-7771
Facsimile:    (310) 888-0109

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 6

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 6

STATEMENT OF THE CASE ................................................................... 8

STATEMENT OF FACTS ......................................................................... 8

SUMMARY OF ARGUMENT ................................................................ 13

DISCUSSION .......................................................................................... 15

I.    STANDARD OF REVIEW .............................................................. 15

II.   STATUTORY FRAMEWORK ........................................................ 16

III.  THE DISTRICT COURT ERRED WHEN IT GRANTED
      CHECKSMART'S MSJ AS TO THE FIRST CLAIM FOR RELIEF
      FOR VIOLATION OF THE FCRA BECAUSE CHECKSMART'S
      DISCLOSURE WAS LEGALLY DEFICIENT, CONTAINING
      IMPERMISSIBLE SURPLUSAGE SPREAD THROUGHOUT A
      MULTI-PAGE, MULTI-DOCUMENT EMPLOYMENT
      APPLICATION AND PRINTED IN A TINY, EIGHT-POINT FONT
      THAT WAS NOT "CLEAR AND CONSPICUOUS" ................................... 19

A.  The FCRA Mandates That the Required Disclosure Under the FCRA Must Be Set Forth in a Standalone Document and Be "Clear and Conspicuous" ........................................................................ 19

B.  As Confirmed by the Law of This Circuit, Articulated in Syed, Checksmart Has Willfully Violated the FCRA Because Its FCRA Disclosure Contains Terms in Addition to the Standalone Disclosure ............................................................................... 20

    1.  Syed Holds That an FCRA Disclosure That Contains Anything Beyond the FCRA Disclosure and an Authorization to Obtain Information Pursuant to the FCRA Is a Willful Violation of the FCRA ........................................................................... 20

    2.  Before Syed, Many District Courts Concluded That the Inclusion of Surplusage, Such as State Law Information, Violates the FCRA's Standalone Requirement ................................ 23

    3.  Checksmart's Form Violates the FCRA's Standalone Requirement in Numerous Ways ....................................................... 24

    4.  The "Disclosure" Is an Inseparable Part of the Four-Page Employment Application and Other Documents That It Incorporates by Reference ................................................. 27

C.  The "Disclosure" Is Not "Clear and Conspicuous" ................................. 29

IV.  THE DISTRICT COURT ERRED WHEN GRANTED

     CHECKSMART'S MOTION AS TO THE THIRD CLAIM FOR

     RELIEF FOR VIOLATION OF THE ICRAA BECAUSE

     CHECKSMART'S DISCLOSURE WAS LEGALLY DEFICIENT,

     INCLUDING IMPERMISSIBLE SURPLUSAGE SPREAD

     THROUGHOUT A FOUR-PAGE EMPLOYMENT APPLICATION ......... 36

     A.   Definitions Relevant to Plaintiff's ICRAA Claim .................................... 36

     B.   The Employment Application Contains Substantial Surplusage in a

          Tiny Font, Failing to Provide a Clear and Conspicuous Disclosure

          Under the ICRAA That Contains Nothing Other Than the

          Disclosure .................................................................................................. 37

V.   THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY

     JUDGMENT AS TO DEFENDANT CALIFORNIA CHECK

     CASHING STORES, LLC BECAUSE NO ADMISSIBLE EVIDENCE

     WAS OFFERED IN SUPPORT OF IT'S MOTION ....................................... 43

VI.  PLAINTIFF DID NOT OPPOSE CHECKSMART'S PARTIAL

     SUMMARY ADJUDICATION AS TO THE SECOND AND FOURTH

     CLAIMS FOR RELIEF .................................................................................... 46

CONCLUSION ......................................................................................................... 47

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Case v. Hertz Corporation*, 2016 WL 11697 (N.D. Cal. 2015) .....................23

*Cole v. U.S. Capital*, 389 F.3d 719 (7th Cir. 2004).........................................33

*Exxon Co. v. Sofec, Inc.*, 54 F.3d 570 (9th Cir. 1995), *aff'd* 517 US 830,
116 S.Ct. 1813 (1996)................................................................................16

*F.D.I.C. v. McSweeney* ..................................................................................4

*Feist v. Petco Animal Supplies, Inc..,* 2016 WL 6902549 (S.D. Cal.
2016)...........................................................................................................24

*Jackson v. Federal Express*, 766 F.3d 189 (2nd Cir. 2014)............................43

*Jones v. Halstead Management Co., LLC*, 2015 WL 36624 (S.D. N. Y.
2015).............................................................................................................24

*Lagos v. Leland Stanford Junior University,* 2015 WL 7878129 (N.D.
Cal. 2015)....................................................................................................23

*Martin v. Fair Collections & Outsourcing Inc.,* 2015 WL 4066940 (D.
Md. 2015).....................................................................................................24

*Miller v. Quest Diagnostics*, 2015 WL 545506 (W.D. Mo. 2015).................23

*Monarch Nut Co., LLC v. Goodnature Prod., Inc.*, No. 1:14-CV-01461
AWI, 2014 WL 6892713 (E.D. Cal. Dec. 4, 2014)....................................42

*Murray v. GMAC Mortg, Corp.*, 274 Fed. Appx. 489 (7th Cir. 2008)............33

*Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940 (N.D. Ill. 2006).......33

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) ..................43

*Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235 (4th Cir. 2009) ............17

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384 (3d Cir. 2002) ...........33

*Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) ......................................33

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ...................................... passim

*Tolan v. Cotton*, ___US ___, 134 S.Ct. 1861 (2014) .......................................16

*Travelers Cas. & Sur. Co. of America v. Brennete*, 551 F.3d 1132 (9th

   Cir. 2009) .....................................................................................................16

*United States v. Graham*, 643 F.3d 885 (11th Cir. 2011) ................................44

*United States v. Middleton*, 231 F.3d 1207, 1209 (9th Cir. 2000) ..................16

*United States v. Neal*, 36 F.3d 1190 (1st Cir. 1994) ........................................45

*United States v. Washington*, 872 F.2d 874 (9th Cir. 1989) .......................4, 21

*Ward v. First Fed'l Savings Bank*, 173 F.3d 611 (7th Cir. 1999) ...................44

## CALIFORNIA CASES

*Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548 (1995) ...........................5

*City of Richmond v. Serv. Employees Int'l Union, Local 1021*, 189 Cal.

   App. 4th 663 (2010) .....................................................................................42

*Gombiner v. Swartz*, 167 Cal. App. 4th 1365 (2008) .......................................42

*Linnastruth v. Mut. Ben. Health & Acc. Ass'n*, 22 Cal. 2d 216 (1943) ...........42

## STATUTES

15 U.S.C. § 1632(a) ...........................................................................................33

15 U.S.C. § 1681(a) ...........................................................................................17

15 U.S.C. § 1681(b) ......................................................................16

15 U.S.C. § 1681(b)(2)(A)(ii) .......................................................20

15 U.S.C. § 1681b(b) ............................................................. passim

15 U.S.C. § 1681b(b)(2)(A) ................................................... passim

15 U.S.C. § 1681d(a)(1) ..................................................................8

15 U.S.C. § 1681g(c) ......................................................................8

15 U.S.C. § 1681n(a)(1)(A) ...........................................................20

28 U.S.C. § 1291 ............................................................................6

28 U.S.C. § 1332 ............................................................................6

28 U.S.C. § 1441 ............................................................................6

28 U.S.C. § 1446 ............................................................................6

Civil Code § 1598 .........................................................................42

Civil Code § 1599 .........................................................................42

Civil Code § 1642 .................................................................. 27, 41

Civil Code § 1654 .........................................................................42

Civil Code § 1785.20(5)(a) ...........................................................18

Civil Code § 1786.16(a)(2)(B) ............................................. 5, 37, 41

Civil Code § 1786.2(c) ..................................................................36

Civil Code § 1786.2(f) ..................................................................37

## OTHER AUTHORITIES

138 Cong. Rec. H9370-03 (1992).................................................17

140 Cong. Rec. H9797-05 (1994).................................................17

**RULES**

Fed. R. App. Proc. 4 ............................................................................6

Fed. R. Evid. 602........................................................................ 44, 45

# INTRODUCTION

This appeal by Plaintiff Desiree Gilberg ("Plaintiff" or "Appellant") follows the District Court's grant of Summary Judgment to Defendants Checksmart Financial LLC ("Checksmart") and Defendant California Check Cashing Stores, LLC in lawsuit alleging that Checksmart obtained protected consumer information without complying with the Fair Credit Reporting Act ("FCRA") and analogous protections existing under California law.

"Congress enacted the FCRA in 1970 in response to concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions. Fair Credit Reporting Act of 1970, Pub. L. 91-508, § 602, 84 Stat. 1114, 1128." *Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir. 2017). Congress then amended the FCRA in 1996 to control the use of consumer information by prospective employers. *Id*. "Congress was specifically concerned that prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights." *Id*.

This lawsuit, filed on behalf of a California employee of Defendants, concerns the very sort of private information that Congress and the California legislature both acted to protect in clear, unequivocal, and exacting terms. As alleged in this matter, and demonstrated without question by the very evidence submitted with its Motion for Summary Judgment ("MSJ"), Checksmart obtained protected consumer information without complying with the FCRA mandate than an employer obtaining consumer background information must,

1

among other things, provide the employee or applicant with a clear and conspicuous background check disclosure, in a document that consists "***solely of the disclosure***." *Syed*, at 497, quoting 15 U.S.C. § 1681b(b)(2)(A) (emphasis added). Instead, Checksmart's purported disclosure is (1) overrun with extraneous information (like confusing state law material) that violates 15 U.S.C. § 1681b(b)(2)(A); (2) spread across a four-page Employment Application such that no reasonable person could perceive that document to be a "stand-alone" disclosure and authorization; (3) extended to two additional documents that are incorporated into what should be a stand-alone disclosure; and (4) written in a miniscule 8-point san serif font that disregards the "clear and conspicuous" requirement that governs FCRA disclosures. Pursuant to the terms of the FCRA, and guided by this Circuit's clear holding in *Syed*, Checksmart's purported disclosure is willfully unlawful, and it was error to grant summary judgment for Defendants.

While the clear language of the FCRA and the guidance supplied by *Syed* should have been dispositive in this Circuit, the District Court erroneously ignored the statutory restrictions set forth in the FCRA and compounded that error by purporting to limit the scope of this Circuit's decision in *Syed*, saying at the June 6, 2017 hearing that *Syed* applied only to "releases" that were included with FCRA disclosures, and not any other unlawful surplusage:

> You rely, Mr. Segal, on *Syed*, the only Ninth Circuit case and the most recent Ninth Circuit case that deals with disclosure, a case that the ultimate holding is favorable for you.

2

> But as the defendant argues, and after reading *Syed*, *Syed* was all about the liability waiver. And I know that you would like me to read more into that and find that it controls here, but I'm not sure that it is applicable.
>
> I think it is easily distinguishable because of the focus by the Ninth Circuit on the liability language that was in the *Syed* disclosure, which isn't present here. I mean, again, it is undisputed there is no such liability language.

(Excerpts of Record ["ER"] 11.)  In fact, *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language and rightly rejected the position that the District Court effectively adopted (a position that would allow courts to legislate additional implied exceptions into the "solely" requirement when, as this Circuit recognized, Congress provided clear indications that it intended otherwise):

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)***. *See* 15 U.S.C. §§ 1681d, 1681s-3.

*Syed*, 853 F.3d at 501 (emphasis added).  Continuing, this Circuit said:

> Congress's express exception to the "solely" requirement, allowing the disclosure document to also contain the authorization to procure a consumer report, does not mean that the statute contains other implicit exceptions as well. *See United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Indeed, in light of Congress's express grant of permission for the inclusion of an authorization, the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions. *See Tenn. Valley*

> *Auth. v. Hill*, 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117
> (1978). We therefore reject M-I's contention that a liability
> waiver is an implicit exception to the "solely" requirement in 15
> U.S.C. § 1681b(b)(2)(A)(i).

*Syed*, 853 F.3d at 501. Put in simplest terms, "solely" means just what is appears to mean, and, *no* implied exceptions to the "solely" requirement should be judicially added to the *one* express exception allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii). The District Court erred when it restricted *Syed*'s applicability to liability waivers and disregarded *Syed*'s broad prohibition on the inclusion of other material in the FCRA disclosure document, a prohibition based both upon the text of the FCRA and well settled principles of statutory construction. As *Syed* is the law of the Circuit, this Court should reverse the District Court's decision to disregard clear provisions of the FCRA the construction of those provisions in this Circuit under *Syed*. *F.D.I.C. v. McSweeney,* 976 F.2d 532, 535 (9th Cir. 1992), citing *United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989). No cogent implied exception could even be crafted here, as the disclosure in question, described below, contains potentially confusing information about laws in other states, other incorporated documents, equivocating language suggesting that some employees would not be subject to background checks, and other surplusage.

California's Investigative Consumer Reporting Agencies Act ("ICRAA"), enacted in 1975 and patterned after the FCRA, has effectively identical requirements: "The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure. . . ."  Civ. Code § 1786.16(a)(2)(B); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 559 (1995).  The fatal deficiencies in Checksmart's FCRA disclosure that should have precluded any grant of partial summary judgment as to the First Claim for Relief likewise should have precluded any grant of partial summary judgment as to the Third Claim for Relief arising under the ICRAA.

For its part, Defendant California Check Cashing Stores, LLC offered absolutely no admissible evidence to support any fact required to grant the Motion as to it.  The one declarant who purported to support its Motion, Ms. Wright, provided no foundation whatsoever for the handful of assertions she made with no apparent basis to have done so.  Having provided no evidence *at all* to support its Motion, Defendant California Check Cashing Stores, LLC cannot shift the burden to Plaintiff to respond.  And Defendant California Check Cashing Stores, LLC could not, in Reply, do what it should have done at the outset.[1]

---

[1] Perhaps, were Defendants not rushing to ensure that their Motion was heard before Plaintiff could depose them, they would not have made that

Checksmart's Motion should have been denied as to the First and Third Claims for Relief. Defendant California Check Cashing Stores, LLC's Motion should have been denied in its entirety for an absence of support.

## JURISDICTIONAL STATEMENT

The District Courts had original jurisdiction pursuant to 28 U.S.C. § 1332(d), and was subject to removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. On June 13, 2017, the District Court granted Defendants' Motion for Summary Judgment. On June 13, 2017, the District Court also entered judgment, thereby terminating the action. (ER, at 28.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellant timely filed a Notice of Appeal on June 14, 2017. (ER, at 25.) See Fed. R. App. Proc. 4.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether, as construed by *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), the FCRA, pursuant to 15 U.S.C. § 1681b(b)(2)(A), mandates that the disclosure provided to a consumer must be set forth in a document that consists "solely of the disclosure," meaning that, other than as expressly permitted by statute, no surplusage may be included in the disclosure.

_____

fundamental error that should have precluded the requested relief for Defendant California Check Cashing Stores, LLC.

2. Whether, like the FCRA, the California ICRAA mandates that the disclosure provided to a consumer must be set forth in a document that consists "solely of the disclosure," meaning that, other than as expressly permitted by statute, no surplusage may be included in the disclosure.

3. Whether a disclosure provided pursuant to the FCRA satisfies the "clear and conspicuous" requirement if it contains some of all of the following attributes: (1) the disclosure is written in a font that approximates Arial Narrow in an eight-point size, (2) the disclosure terms are not in all capital letters, (3) the disclosure is not in a boldface font to set off the disclosure, (4) the disclosure also includes information about multiple states, (5) the disclosure incorporates terms in two other documents, and (6) references to the disclosure are contained in multiple locations of a four-page document.

4. Whether a disclosure provided pursuant to the ICRAA satisfies the "clear and conspicuous" requirement if it contains some of all of the following attributes: (1) the disclosure is written in a font that approximates Arial Narrow in an eight-point size, (2) the disclosure terms are not in all capital letters, (3) the disclosure is not in a boldface font to set off the disclosure, (4) the disclosure also includes information about multiple states, (5) the disclosure incorporates terms in two other documents, and (6) references to the disclosure are contained in multiple locations of a four-page document.

5. Whether summary judgment should be granted to a defendant that fails to offer any competent evidence in support of a motion that depends upon the mixed factual and legal contention that it is not an employer.

## STATEMENT OF THE CASE

This matter was filed in the Superior Court of Los Angeles County, removed to the United States District Court for the Central District of California, and then transferred to the Eastern District of California. The claims for relief are: (1) Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act); (2) Violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c) (Fair Credit Reporting Act); (3) Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act); and (4) Violation of Civil Code § 1785 et seq. (Consumer Credit Reporting Agencies Act). (ER, at 273.)

Defendants moved for Summary Judgment on May 9, 2017. The matter was set for hearing on June 6, 2017. (ER, at 4.) On June 13, 2017, the Court ruled in favor of Defendants on their Motion for Summary Judgment, and, on that same day, the Court entered judgment in favor of Defendants as to all claims. (ER, at 1, 28.)

## STATEMENT OF FACTS

The "Disclosure" relied upon by Checksmart in this action is found at Exhibits 4 and 4(a) of the Hawkins Declaration. (ER, at 245, 250.) Up until

Checksmart decided that it wanted to move for summary judgment, it characterized its Employment Application packet as a single document, consisting of four pages. (ER, at 239-40.)

The "Disclosure," such that it is, contains a large amount of extraneous information not authorized under the FCRA or the ICRAA. For example, the first page of the four-page document on which Defendant CheckSmart relies contains substantial information beyond the FCRA disclosure. For example, the document says *in miniscule 8-point font that is or resembles Arial Narrow*:

> **New York and Maine applicants or employees only**: You have the right to inspect and receive a copy of any investigative consumer report requested by <u>Checksmart Financial, LLC</u> by contacting the consumer reporting agency identified above directly. You may also contact the Company to request the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries, which the Company shall provide within 5 days.
>
> **New York applicants or employees only**: Upon request, you will be informed whether or not a consumer report was requested by <u>Checksmart Financial LLC</u> and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.
>
> **Oregon applicants or employees only**: Information describing your rights under federal and Oregon law regarding consumer identity theft protection, the storage and disposal of your credit information, and remedies available should you suspect or find that the Company has not maintained secured records is available to you upon request
>
> **Washington State applicants or employees only**: You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

(ER, at 184, 188, 245, 250.) In addition, the first page says:

9

**California applicants or employees only**: By signing below, you also acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION PURSUANT TO CALIFORNIA LAW. Please check this box If you would like to receive a copy of an investigative consumer report or consumer credit report if one is obtained by the Company at no charge whenever you have a right to receive such a copy under California law. ☐

**Minnesota and Oklahoma applicants or employees only**: Check this box if you would like to receive a free copy of a consumer report if one is obtained by the Company. ☐

**New York applicants or employees only**: By signing below, you also acknowledge receipt of Article 23-A of the New York Correction Law.

(ER, at 184, 188, 245, 250.) The first page also includes a dense paragraph that says:

**Checksmart Financial, LLC** may obtain information about you from a consumer reporting agency for employment purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include Information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal Interviews with sources such as your neighbors, friends, or associates. These reports may include employment history and reference checks, criminal and civil litigation history information, motor vehicle records ('driving records'), sex offender status, credit reports, education verification, professional licensure, drug testing, Social Security Verification, and information concerning workers' compensation claims (only once a conditional offer of employment has been made). Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying. You have the right, upon written request made within a reasonable time after receipt of this notice, to request whether a consumer report has been run about you, and the nature and scope of any Investigative consumer report, and request a copy of your report. Please be advised that the nature and scope of the most common form of investigative consumer report obtained with regard to applicants for employment is an investigation into your education and/or employment history conducted by

Employment Screening Services, 2500 Southlake Park, Birmingham, AL 35244, toll-free 866.859.0143, www.es2.com or another outside organization. The scope of this notice and authorization is all-encompassing; however, allowing Checksmart Financial, LLC to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and, if you are hired, throughout the course of your employment to the extent permitted by law. As a result, you should carefully consider whether to exercise your fight to request disclosure of the nature and scope of any investigative consumer report.

(ER, at 184, 188, 245, 250.)

Moreover, on page four of the four-page documents submitted by

Defendants as Exhibits 4 and 4(a) to the Hawkins Declaration, the document

says:

APPLICANT'S CERTIFICATION AND AGREEMENT

CheckSmart Financial, LLC, will check the motor vehicle records of any job applicant where driving is an essential job function and where a rental car must be obtained for business travel purposes. The applicant's job offer is contingent upon this driving record check. The driving record check will Include review of any appropriate state records based on the applicants application and resume. If an applicant has a driving record that meets or exceeds the criteria listed under the Unacceptable Status, the applicant will not be hired. Unacceptable Status: Suspended or revoked license; 3 or more minor moving violations in the past 36 months; 2 or more al-fault accidents within the past 36 months;1 or more major moving / class A violations within the past 36 months; Applicant is unable to provide current, valid driver's license issued by the resident state; Applicant is unable to provide proof of current, in-force personal automobile liability insurance.

I acknowledge and accept that the phrase "the company" In this application refers to CheckSmart Financial, LLC. *I understand that by signing this application I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment, general reputation, educational background, and criminal history. In the event of employment, I understand that false. or misleading*

***information given in my application or interview(s) may result in immediate dismissal***. I understand, also, that I am required to abide by all rules and regulations of the company. I understand and agree that if employed, the employment will be "at will". That is, either I or the company may end the employment relationship at any time, for any reason, or for no reason. I understand that receipt of this application by the company does not imply employment and that this application and/or any other company documents are not contracts of employment.

I, the undersigned, give the company or its contractors, authorization to conduct any criminal, dog and/or alcohol testing it deems necessary in connection with my employment application. I authorize and instruct any person or consumer reporting agency to compile and furnish any information it may have or obtain in response to such inquires. I give my consent for the release of test results to authorized company management for review and ***I release, remise, and forever discharge the company, its employees, officers, directors and agents from any and all liability, actions or causes of action, of whatever nature, arising as a result of these inquires***. I understand that refusal to sign this consent form or refusal to summit [sic] to testing upon arrival at any contracted facility will eliminate me as a candidate for employment.

(ER, at 187, 191, 248, 253.)

Page one of Checksmart's Employment Application contains a font that is approximately 8-point in size and comparable to Arial Narrow. (ER, at 184, 188, 245, 250.) And the bottom half of page four of Checksmart's Employment Application contains a font that is approximately 8-point in size and comparable to Arial Narrow. (ER, at 187, 191, 248, 253.) Page one of Checksmart's Employment Application contains 32 lines of text between the heading "DISCLOSURE AND ACKNOWLEDGMENT" and the signature lines. (ER, at 184, 188, 245, 250.) Of the 32 lines of text between the heading "DISCLOSURE AND ACKNOWLEDGMENT" and the signature lines on

page one of Checksmart's Employment Application, 14 of those lines, *or 44%*, are not a part of the FCRA Disclosure.  (ER, at 184, 188, 245, 250.)

Page one of Checksmart's Employment Application also refers to two separate documents.  One is identified as a NOTICE REGARDING BACKGROUND INVESTIGATION, and it is not included in the Employment Application.  (ER, at 184, 188, 245, 250.)  The second is identified as A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT, and it is also not included in the Employment Application.  (ER, at 184, 188, 245, 250.)

## SUMMARY OF ARGUMENT

Plaintiff contends that the District Court erred when it granted Defendants' Motion for Summary Judgment.

First, the disclosure form utilized by Checksmart contained terms in addition to the statutorily permitted disclosures and the statutorily permitted authorization to obtain consumer background information for employment purposes.  15 U.S.C.A. § 1681b(b)(2)(A)(i) and (ii). As this Circuit recently held, the law of this Circuit is that Courts should not create additional exceptions to the "standalone" requirement governing disclosures of rights under the FCRA.  *Syed*, 853 F.3d at 501.  Those surplus terms included:

- Statements about state laws inapplicable to Plaintiff, including New York, Maine, Oregon, Minnesota, Oklahoma, and Washington. (ER, at 184, 188, 245, 250.)

13

- Unclear surplusage stating, "Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying." (ER, at 184, 188, 245, 250.)

- A reference on page four of the Employment Application to the disclosure provisions on page one, stating, "I understand that by signing this application I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment, general reputation, educational background, and criminal history." (ER, at 187, 191, 248, 253.)

- An unlawful liability waiver, saying, "I release, remise, and forever discharge the company, its employees, officers, directors and agents from any and all liability, actions or causes of action, of whatever nature, arising as a result of these inquires." (ER, at 187, 191, 248, 253.)

- The incorporation of two other side documents (ER, at 184, 188, 245, 250.)

Second, the disclosure was not "clear and conspicuous" under any reasonable meaning of that term. Specifically, the disclosure was inadequate in that regard because it:

- The disclosure was written in an eight-point font, compressed font that is comparable to Arial Narrow.

- The disclosure provisions were not in all capital letters to call attention to those important terms.

- The disclosure was not in boldface to set off and highlight the important disclosure terms.

- The disclosure was not reasonably understandable, containing multi-state information and other information across a four-page document and two side documents. (ER, at 184-187, 188-191, 245-248, 250-353.)

- Nearly half of the first page of the Employment Application (44%) is surplusage that should not even appear in an FCRA disclosure. (ER, at 184, 188, 245, 250.)

Third, since the California ICRAA mirrors the requirements of relevant provisions of the FCRA, the analysis of the failure to comply with the "standalone" and "clear and conspicuous" requirements under the FCRA applies with equal force to the ICRAA.

Fourth, the District Court erred when it excused Defendant California Check Cashing Stores, LLC's failure to submit any competent evidence to support its motion for summary judgment.

## DISCUSSION

## I.   STANDARD OF REVIEW

An order granting or denying summary judgment generally is reviewed *de novo. Travelers Cas. & Sur. Co. of America v. Brennete*, 551 F.3d 1132,

15

1137 (9th Cir. 2009) (order granting summary judgment). The challenged decisions of the District Court turn on its construction of the FCRA's "standalone" disclosure requirement, the FCRA's "clear and conspicuous" disclosure requirement, and the analogous requirements imposed under California's equally protective ICRAA. The District Court's construction of the underlying law is challenged, as is its application to facts. The District Court's decisions regarding the interpretation or application of law to a given dispute are reviewed *de novo*. *United States v. Middleton*, 231 F.3d 1207, 1209 (9th Cir. 2000); *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 573 (9th Cir. 1995), *aff'd* 517 US 830, 116 S.Ct. 1813 (1996). Inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, ___US ___, 134 S.Ct. 1861, 1863 (2014). Defendants bear the burden of proof with respect to their affirmative defenses. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

## II.   STATUTORY FRAMEWORK

Congress enacted the Fair Credit Reporting Act in 1970 to protect the "consumer's right to privacy" by ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information. 15 U.S.C. § 1681(b). And, recognizing the "vital role" that consumer reports play in the modern economy, Congress sought to encourage those who handling the sensitive information in those reports to "exercise their grave responsibilities" in a way that "ensure[s] fair and accurate credit reporting." 15 U.S.C. §

16

1681(a); *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 239 (4th Cir. 2009). The FCRA furthers these purposes through a set of interrelated requirements and prohibitions—including strict restrictions on the use of reports for various purposes and detailed requirements about how consumers must be informed of their rights.

A critical motivation for revisions to the FCRA was the impact of third-party data collection on the individual privacy rights of job seekers. When it revised the FCRA, Congress voiced a strong "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper *invasion of privacy*." S. Rep. No. 104-185, at 35 (1995). As one legislator explained, the FCRA's protections represented "new safeguards to protect the *privacy* of employees and job applicants"; the amendments to the FCRA were "an important step to *restore employee privacy rights*." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and *privacy protections*").

As a result, under the FCRA, an employer must disclose to a job seeker that "a consumer report may be obtained for employment purposes" and must obtain authorization from a consumer before procuring his or her consumer report. *See* 15 U.S.C. § 1681b(b)(2). And, to ensure that prospective employees are adequately informed about their rights concerning these consumer reports,

17

the FCRA requires that this information be provided "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A). Absent the job seeker's informed consent or strict compliance with the statute's disclosure requirements, a company is prohibited from obtaining a consumer report on the job seeker.

California has also enacted two statutes that in substance offer the same protection as the FCRA, the Consumer Credit Reporting Agencies Act, and the Investigative Consumer Reporting Agencies Act. Civ. Code §§ 1785 *et seq.* and 1786 *et seq*. Both, like the FCRA, require a stand-alone disclosure before a background check can be done. Further, the CCRAA requires disclosure of the "specific basis" for use of a credit report and the source of the report. Civ. Code §1785.20(5)(a).

**III. THE DISTRICT COURT ERRED WHEN IT GRANTED CHECKSMART'S MSJ AS TO THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE FCRA BECAUSE CHECKSMART'S DISCLOSURE WAS LEGALLY DEFICIENT, CONTAINING IMPERMISSIBLE SURPLUSAGE SPREAD THROUGHOUT A MULTI-PAGE, MULTI-DOCUMENT EMPLOYMENT APPLICATION AND PRINTED IN A TINY, EIGHT-POINT FONT THAT WAS NOT "CLEAR AND CONSPICUOUS"**

**A.** **The FCRA Mandates That the Required Disclosure Under the FCRA *Must* Be Set Forth in a *Standalone* Document and Be "Clear and Conspicuous"**

The FCRA, at 15 U.S.C. § 1681b(b), requires employers to use certain standard form documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees. Section 1681a(d)(1) of the FCRA defines "consumer report" as:

> [A]ny oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

As one of the many specified practices required of employers using "consumer reports" to assess the qualifications of prospective and current

employees, the FCRA expressly requires employers to provide a "***clear and conspicuous*** disclosure . . . in a document that consists ***solely*** of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). It recognizes only one exception to this, namely that the FCRA authorization can be combined with the FCRA disclosure in the same document. 15 U.S.C. § 1681(b)(2)(A)(ii) ("which authorization may be made on the document referred to in clause (i)"). Because the Congress determined that the policies underlying the FCRA are of substantial importance, a plaintiff is entitled to statutory damages when the defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A).

**B.** **As Confirmed by the Law of This Circuit, Articulated in *Syed*, Checksmart Has Willfully Violated the FCRA Because Its FCRA Disclosure Contains Terms in Addition to the Standalone Disclosure**

    1.   <u>*Syed* Holds That an FCRA Disclosure That Contains Anything Beyond the FCRA Disclosure and an Authorization to Obtain Information Pursuant to the FCRA Is a Willful Violation of the FCRA</u>

This Circuit recently issued a significant decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I,*

*LLC*, 2017 WL M-I, LLC, 853 F.3d 492 (9th Cir. 2017).[2]  In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 497-98. The Ninth Circuit held that under the plain language of the FCRA the required disclosure must be in "a document that consists solely of the disclosure" the inclusion of surplusage such as a liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500. This Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure: "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 505-6.

The District Court recognized that the disclosure used by Checksmart contains surplusage:

> It's surplusage. Probably better if it wasn't in there but, again, the issue is does it make it illegal or improper, and I don't see as a matter of law that that creates a violation of the FCRA.

(ER, at 18-19.)  But, despite the analysis set forth in *Syed*, and despite the District Court's recognition that the surplusage should not be present, the

---

[2] As noted above, because *Syed* is dispositive as to the "standalone" requirement imposed under the FCRA, and no intervening authority exists that limits or overrules it, *Syed* is the law of the Circuit.  *F.D.I.C. v. McSweeney,* 976 F.2d at 535, citing *United States v. Washington*, 872 F.2d at 880.

District Court nevertheless concluded that *this* surplusage was permissible. In so holding, the District Court conferred on itself the power to allow some surplusage in FCRA disclosures while rejecting other forms of surplusage as unlawful on an ad hoc basis.  *Syed*, however, cautioned against such an outcome:

> Congress's express exception to the "solely" requirement, allowing the disclosure document to also contain the authorization to procure a consumer report, does not mean that the statute contains other implicit exceptions as well. *See United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Indeed, in light of Congress's express grant of permission for the inclusion of an authorization, the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). We therefore reject M-I's contention that a liability waiver is an implicit exception to the "solely" requirement in 15 U.S.C. § 1681b(b)(2)(A)(i).

*Syed*, 853 F.3d at 501. The District Court erred when it excused the inclusion of material it recognized as "surplusage."

Here, even if, *arguendo*, this Court set about the task of crafting an implied exception to the "solely" requirement, it would quickly become apparent that no cogent implied exception could be crafted that would not rapidly descend into the creation of exceptions that swallow the "solely" requirement.  As discussed in greater detail below, at Part III.B.3, the disclosure in question here contains potentially confusing information about laws in other states that obscure rather than clarify rights.  The disclosure references other incorporated documents, making it difficult for the average consumer to ascertain the extent of the disclosure and extent of the authorization to obtain

22

private information. The disclosure contains equivocating language suggesting that some employees would not be subject to background checks, further clouding the scope of the disclosure and authorization. Like *Syed*, the four-page Employment Application that Defendants treat as a single document contains liability release language and a reference to the background check, which creates the same risk rejected in *Syed*. *Syed*, 853 F.3d at 502. And the disclosure contains other surplusage that detracts from the intended purpose of the exacting disclosure requirements under the FCRA. No implied exceptions – which would need to be broad and imprecise in this matter to ensure that the many defects in Defendants' disclosure were fully captured – should be crafted out of whole cloth here, in violation of a Congressional intent recognize by this Circuit in *Syed*. *Syed*, 853 F.3d at 501.

>       2.     Before *Syed*, Many District Courts Concluded That the
>              Inclusion of Surplusage, Such as State Law Information,
>              Violates the FCRA's Standalone Requirement

While *Syed* is dispositive (as is the statutory text) numerous courts have found forms similar to the Checksmart form (ER, at 184, 188, 245, 250) to be unlawful due, in part, to the inclusion of state-specific language. For example, in *Lagos v. Leland Stanford Junior University,* 2015 WL 7878129 (N.D. Cal. 2015) the district court found that a form with state law disclosures and other erroneous information was unlawful. *See also Case v. Hertz Corporation*, 2016 WL 11697 at \*5 (N.D. Cal. 2015); *Miller v. Quest Diagnostics*, 2015 WL 545506 (W.D. Mo. 2015); *Martin v. Fair Collections & Outsourcing Inc.,* 2015

WL 4066940 (D. Md. 2015); *Jones v. Halstead Management Co., LLC*, 2015
WL 36624 at *5 (S.D. N. Y. 2015) (all denying motions to dismiss where forms
contained state specific disclosures and other extraneous information). And in
*Feist v. Petco Animal Supplies, Inc..,* 2016 WL 6902549 *1 (S.D. Cal. 2016)
the district court found a violation of the standalone disclosure requirement
where the form included: "an authorization allowing other entities to disclose
information about the applicant, a summary of consumer rights under the
FCRA, and a list of entities that enforce the FCRA." These decisions are
buttressed by *Syed*, which holds, based on the clear statutory language, that (1)
courts should not find their own exceptions to the "solely" requirement, and (2)
an employer willfully violates the statute by including terms not expressly
authorized in addition to the disclosure.

> 3.    Checksmart's Form Violates the FCRA's Standalone
>        Requirement in Numerous Ways

As set forth in the Statement of Facts, *supra*, the "Disclosure" contains a
large amount of extraneous information not authorized under the FCRA. The
first page of the four-page document on which Defendant CheckSmart relied in
its MSJ contains numerous provisions about different states, including New
York, Maine, Oregon, Minnesota, Oklahoma, and Washington.[3] (ER, at 184,

---

[3] At least as to this information, an obvious remedy exists. Checksmart
could have provided an applicant in a specific state, such as New York, with a
separate disclosure of rights applicable to citizens of that state only, in a
document separate from the mandatory FCRA disclosures. In that way, a

188, 245, 250.)  The first paragraph on the first page also includes a dense paragraph that says, among other things, "Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying."  (ER, at 184, 188, 245, 250.) Rather than, "disclosing" information, this surplusage adds confusion, as it is unclear what job duties would call for a credit report to be pulled.

Also, as noted above, page four of the four-page document cross-references the first page, saying, "I understand that by signing this application I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment, general reputation, educational background, and criminal history."  (ER, at 187, 191, 248, 253.) This is unquestionably language that mirrors mandatory disclosure elements under the FCRA (which are also found on page one of the Employment Application). And page four also includes an unlawful liability waiver, saying, "I release, remise, and forever discharge the company, its employees, officers, directors and agents from any and all liability, actions or causes of action, of whatever nature, arising as a result of these inquires." (ER, at 187, 191, 248, 253.)  This release language, connected to a provision that appears to reference a background check and background check authorization, was rejected as improper by this Circuit in *Syed*.  *Syed*, 853 F.3d at 502. The inclusion of these

---

citizen of California would have faced no risk of being confused as to how different laws in different states impact rights of the California citizen.

provisions within an Employment Application constitutes a clear violation of the standalone requirement.

The obvious violations of the standalone requirement, discussed above, are not the end of the violations evident in the disclosure. Here, the disclosure evidences additional violations of the standalone requirement, since the first page incorporates not one, but two other documents, saying (again, in 8-point compressed type):

> *I acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT* and certify that I have read and understand both of those documents.

(ER, at 184, 188, 245, 250.)[4] By its very terms, the supposedly "standalone" disclosure form requires the recipient to read *two* other documents. (ER, at 184, 188, 245, 250.) By placing that acknowledgement of receipt before language stating, "I hereby authorize the obtaining of 'consumer reports' and/or 'investigative consumer reports' at any time after receipt of this authorization and, if I am hired, throughout my employment," Checksmart has blatantly violated the standalone requirement of 15 U.S.C. § 1681b(b)(2)(A)(i). The average reasonable consumer will perceive the cross-referenced documents as additional disclosures, as there is no other

---

[4] The difficulty in reading the narrow, tiny font would be more obvious were it possible to depict in this Brief the text in its true form, which, as noted above, appears to be 8-point, Arial Narrow font text. However, text size requirements preclude doing so in the body of the Opening Brief.

reasonable way to interpret the incorporation of those additional documents. Assuming a typical consumer could wade through or understand the micro-font text used for the so-called "Disclosure," the language therein clearly combines multiple documents that scatter disclosure information and a substantial amount of surplusage throughout a four-page Employment Application, and four pages of side documents (much of which is unrelated to the data that might be collected for an employment background screening process).  (ER, at 184, 188, 193, 195-197, 245, 250.)

> 4.  The "Disclosure" Is an Inseparable Part of the Four-Page Employment Application and Other Documents That It Incorporates by Reference

Civil Code § 1642 provides that: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." As such, all of the provisions within the four-page Employment Application document (ER, at 184, 188, 245, 250) need to be read together, and if any part is unlawful, the whole must be viewed as unlawful. Significantly, page four says, in part:

> I understand that by signing this application ***I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment***, general reputation, educational background, and criminal history. In the event of employment, I understand that false. or misleading information given in my application or interview(s) may result in immediate dismissal.

(ER, at 187, 191, 248, 253 (emphasis added).)[5]  Clearly, and as the District Court should have readily concluded, the average reasonable job applicant would view this language as a reference to the background checks mentioned elsewhere in the Employment Application.  It uses the very sort of language used on FCRA disclosures. Likewise, the improper exculpatory provision at page four of the Employment Application would lead any average reasonable employment applicant to conclude that a release of any claim arising from background checks was part of the four-page, single document:

> I release, remise, and forever discharge the company, its employees, officers, directors and agents from any and all liability, actions or causes of action, of whatever nature, arising as a result of ***these inquires***.

(ER, at 187, 191, 248, 253 (emphasis added).)  The District Court should have concluded that the background check authorization language and the improper exculpatory provision at page four of the Employment Application would lead any average reasonable employment applicant to conclude that a release of any claim arising from background checks was part of the four-page, single document.

Moreover, as explained above, the first page of the Employment Application expressly incorporates two other documents.  (ER, at 184, 188, 193, 195-197, 245, 250.)  Even if it were unclear as to whether the fourth page of the Employment Application refers to the first page of the Employment

---

[5] Again, the actual text approximates an 8-point, Arial Narrow font.

Application, that specious argument could not be made with regard to an

express incorporation of external documents.[6]  A finding that the "Disclosure"

on page one is a standalone document is refuted by undisputable evidence, and

the District Court erred in not holding as such.

### C.    The "Disclosure" Is Not "Clear and Conspicuous"

In analyzing Plaintiff's contention that the disclosure failed to satisfy the

"clear and conspicuous" requirement, the District Court rejected every

deficiency identified by Plaintiff.  The District Court concluded that the use of

8-point, narrow text was not inadequate, as found by another court, because the

text was on the front of pages, rather than the back: "Again, that case is easily

distinguishable in that we don't have a disclosure on the back side of a flyer."

(ER, at 20.)  The District Court also found that it was sufficient to center and

underline the title of the disclosure document, even though the balance of the

---

[6] Plaintiff requested pursuant to Rule 56 that the hearing date of
Defendants Motion be moved to allow Plaintiff to depose Defendant on a date
within the existing discovery cut-off, after Defendant resisted scheduling that
deposition for many months.  The District Court denied that relief to Plaintiff
(Dkt. No. 53), evidently requiring that Plaintiff complete discovery at some
unspecified time prior to the discovery cut-off.  As a result, Plaintiff was
denied the opportunity to present any testimonial admissions by Defendant
about its multi-document disclosure and internally cross-referencing
Employment Application.  While Plaintiff believes that her Opposition was
sufficient to address the First and Third Claims for Relief, to the extent that
later-obtained evidence that Plaintiff sought could have had the potential to
change the outcome, Plaintiff contends that the ruling by the District Court
was erroneous.

disclosure was not in larger font, capitalized, or in a boldface font. (ER, at 20.) In short, the District Court excused every deficiency by characterizing the grievances as complaints that the disclosure contained too much information: "It's really an argument that, as Mr. Snider argued, there may be too much information." (ER, at 20.) The District Court erred when it failed to find that Checksmart's "Disclosure" is legally deficient because it fails to satisfy the "clear and conspicuous" requirement.

Forcing extraneous information into the Employment Application to avoid creating other forms, the first and fourth pages are an exercise in eyestrain. For example, using an eight-point font that is comparable to Arial Narrow, the first page says, in part:

> **New York and Maine applicants or employees only**: You have the right to inspect and receive a copy of any investigative consumer report requested by Checksmart Financial, LLC by contacting the consumer reporting agency identified above directly. You may also contact the Company to request the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries, which the Company shall provide within 5 days.
>
> **New York applicants or employees only**: Upon request, you will be informed whether or not a consumer report was requested by Checksmart Financial LLC and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.
>
> **Oregon applicants or employees only**: Information describing your rights under federal and Oregon law regarding consumer identity theft protection, the storage and disposal of your credit information, and remedies available should you suspect or find that the Company has not maintained secured records is available to you upon request

> **Washington State applicants or employees only**: You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

(ER, at 184, 188, 245, 250.)  In addition, the first page says:

> **California applicants or employees only**: By signing below, you also acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION PURSUANT TO CALIFORNIA LAW. Please check this box If you would like to receive a copy of an investigative consumer report or consumer credit report if one is obtained by the Company at no charge whenever you have a right to receive such a copy under California law. □
>
> **Minnesota and Oklahoma applicants or employees only**: Check this box if you would like to receive a free copy of a consumer report if one is obtained by the Company. □
>
> **New York applicants or employees only**: By signing below, you also acknowledge receipt of Article 23-A of the New York Correction Law.

(ER, at 184, 188, 245, 250.)  And, written in the same tiny font, the first page

also says:

> **Checksmart Financial, LLC** may obtain information about you from a consumer reporting agency for employment purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include Information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal Interviews with sources such as your neighbors, friends, or associates. These reports may include employment history and reference checks, criminal and civil litigation history information, motor vehicle records ('driving records'), sex offender status, credit reports, education verification, professional licensure, drug testing, Social Security Verification, and information concerning workers' compensation claims (only once a conditional offer of employment has been made). Credit history will only be requested where such information is substantially related to the dudes and responsibilities of the position for which you are applying. You have the right, upon written request made within a reasonable

time after receipt of this notice, to request whether a consumer
report has been run about you, and the nature and scope of any
Investigative consumer report, and request a copy of your report
Please be advised that the nature and scope of the most common
form of investigative consumer report obtained with regard to
applicants for emp1oyment is an investigation into your
education and/or employment history conducted by
Employment Screening Services, 2500 Southlake Park,
Birmingham, AL 35244, toll-free 866.859.0143, www.es2.com
or another outside organization. The scope of this notice and
authorization is all-encompassing; however, allowing
Checksmart Financial, LLC to obtain from any outside
organization all manner of consumer reports and investigative
consumer reports now and, if you are hired, throughout the
course of your employment to the extent permitted by law. As a
result, you should carefully consider whether to exercise your
fight to request disclosure of the nature and scope of any
investigative consumer report.

(ER, at 184, 188, 245, 250.)  Finally, it is worth emphasizing that the font

used, which looks remarkably similar to Arial Narrow or a close analogue,

isn't just small at 8 points in size.  It is a linearly compressed font. Arial

Narrow is designed to allow more text to fit within any given linear measure

than most other fonts of a comparable vertical height.  The use of Arial

Narrow in a small point size is an abuse of the requirements that the

disclosure be "clear and conspicuous."  Said another way, what is "clear and

conspicuous" about the disclosure created by Checksmart? (ER, at 184, 188,

245, 250.)

While the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i) must be

clear and conspicuous, it is fair to recognize that FCRA does not specially

define the term "clear and conspicuous." Perhaps owing to the relative clarity of

the words "clear and conspicuous," there is surprisingly little case law

interpreting the term as used in 15 U.S.C. § 1681b. The Court of Appeals for

the Seventh Circuit said "it is appropriate to draw upon the wealth of [Uniform Commercial Code ("UCC")] and [Truth in Lending Act ("TILA")] case law in determining the meaning of 'clear and conspicuous' under the FCRA." *See Cole v. U.S. Capital*, 389 F.3d 719, 730 (7th Cir. 2004); *see also Stevenson v. TRW Inc.*, 987 F.2d 288, 295-96 (5th Cir. 1993) (interpreting "clear and conspicuous" language used in section 1681i(d) of the FCRA with reference to TILA and UCC cases). The Third Circuit has interpreted a "clear and conspicuous" disclosure to mean, in the context of the TILA, "in a reasonably understandable form and readily noticeable to the consumer." *See Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002) (citing 15 U.S.C. § 1632(a)). The UCC defines conspicuous as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." U.C.C. § 1-201(b)(10). Other courts have regarded a FCRA disclosure as being nonconspicuous where it was printed ***in small type***, on the back of a document, ***when it is the same size and typeface as the terms around it***, ***or when it is not in boldface or capital lettering***. *See, e.g., Murray v. GMAC Mortg, Corp*., 274 Fed. Appx. 489, 490-91 (7th Cir. 2008) (disclosure was not "conspicuous" within the meaning of FCRA requirements where it appeared on backside of solicitation flyer and occupied two of ten paragraphs all in the same size type); *Cole*, 389 F.3d at 731 (disclosure not "clear and conspicuous" where it was made in a paragraph at very bottom of flyer, printed in small font, and that was not set off from remainder of text in any way); *Murray v. Sunrise Chevrolet, Inc*., 441 F. Supp. 2d 940, 948 (N.D. Ill. 2006) (disclosure was not

"clear and conspicuous" where notice appeared in a single paragraph at the bottom of a flyer and was printed in the smallest typeface on the page).

Applying these guidelines, the above-quoted text does not comply with the "clear and conspicuous" requirement. The provisions scattered across the four-page Employment Application are (1) written in a tiny, eight-point font and replete with inapplicable surplusage, (2) not in all capital letters, (3) not in boldface to set off the Disclosure, and (4) not reasonably understandable with multi-state information and other information included across a four-page document. (ER, at 184-187, 188-191, 245-248, 250-353.) In addition, other terms, in two side documents, are *also* incorporated. (ER, at 184, 188, 245, 250.) The "Disclosure" here is not a "clear and conspicuous" disclosure. Had Checksmart limited its FCRA Disclosure to the required information, and placed it on a standalone page not referred to elsewhere in a four-page Employment Application, it could have avoided the need to use an absurdly small, eight-point san serif font that no average reasonable consumer could perceive as "clear and conspicuous." Instead, 44% of the first page of the Employment Application, ***nearly half***, is surplusage that should not even appear in an FCRA disclosure. (ER, at 184, 188, 245, 250.) *Syed*, 853 F.3d at 501.

In addition to the structural problems with a so-called disclosure, written in tiny font, and spread across multiple documents, the disclosure contains internally inconsistent language that is likely to confuse a non-lawyer. For example, the first page of the Employment Application says, "New York and

Maine applicants or employees only: You have the right to inspect and receive a copy of any investigative consumer report requested by Checksmart Financial, LLC by contacting the consumer reporting agency identified above directly." (ER, at 184, 188, 245, 250.) Reading this, an average reasonable consumer could believe that *only* New York and Maine applicants are allowed to contact the consumer reporting agency to get a copy of the any investigative consumer report. These confusing additional provisions are the direct and predictable result of Checksmart's effort to cut corners by shoehorning inapplicable surplusage into the disclosure. The FCRA disclosure should be a standalone document and, if desired, a bare authorization to obtain information, without being weighed down by multiple, irrelevant state law references, confusing and contradictory rights summaries, and references to side documents containing information not set forth in the attempted disclosure.

The first paragraph on the first page of the employment application packet also includes a dense paragraph that says, among other things, "Credit history will only be requested where such information is substantially related to the duties and responsibilities of the position for which you are applying." (ER, at 184, 188, 245, 250.) Rather than, "disclosing" information and rights, this statement obfuscates them. It is left to the reader's imagination to surmise what job duties would call for a credit report to be pulled.

It is beyond reasonable dispute that the "Disclosure" here is not a "clear and conspicuous" disclosure. Checksmart's colorful diagram with numbers and arrows simply confirms that, without an absurd visual aid to mask surplusage

35

and direct the reader, there is nothing clear or conspicuous about Checksmart's multi-form set of documents.

IV. **THE DISTRICT COURT ERRED WHEN GRANTED CHECKSMART'S MOTION AS TO THE THIRD CLAIM FOR RELIEF FOR VIOLATION OF THE ICRAA BECAUSE CHECKSMART'S DISCLOSURE WAS LEGALLY DEFICIENT, INCLUDING IMPERMISSIBLE SURPLUSAGE SPREAD THROUGHOUT A FOUR-PAGE EMPLOYMENT APPLICATION**

A. **Definitions Relevant to Plaintiff's ICRAA Claim**

Defendant did not deny that the background check performed on Plaintiff constitutes an investigative consumer report for purposes of the ICRAA. Under the ICRAA, the definition of "investigative consumer report" is broader than the definition used by the FCRA:

> The term "investigative consumer report" means a consumer report in which information on a consumer's character, ***general reputation***, ***personal characteristics***, or mode of living ***is obtained through any means***. The term does not include a consumer report or other compilation of information that is limited to specific factual information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer.

Civ. Code § 1786.2(c) (emphasis added). "The term 'employment purposes,' when used in connection with an investigative consumer report, means a

report used for the purpose of evaluating a consumer for employment, promotion, reassignment, or retention as an employee." Civ. Code § 1786.2(f).

**B.    The Employment Application Contains Substantial Surplusage in a Tiny Font, Failing to Provide a Clear and Conspicuous Disclosure Under the ICRAA That Contains Nothing Other Than the Disclosure**

Like the FCRA, the disclosure required by the ICRAA must contain absolutely no surplusage beyond the legally required disclosure: "The person procuring or causing the report to be made provides *a clear and conspicuous disclosure* in writing to the consumer at any time before the report is procured or caused to be made *in a document that consists solely of the disclosure*. . . ." Civ. Code § 1786.16(a)(2)(B) (emphasis added). Simply looking at the Employment Application is enough to confirm that Checksmart did not comply with this requirement that is essentially identical to the disclosure requirement under the FCRA, discussed above. (ER, at 184, 188, 245, 250.) Specifically, the following text is not part of the ICRAA disclosure required under California law:

> <u>**New York and Maine applicants or employees only**</u>: You have the right to inspect and receive a copy of any investigative consumer report requested by <u>Checksmart Financial, LLC</u> by contacting the consumer reporting agency identified above directly. You may also contact the Company to request the name, address and telephone number of the nearest unit of the

consumer reporting agency designated to handle inquiries, which the Company shall provide within 5 days.

**New York applicants or employees only**: Upon request, you will be informed whether or not a consumer report was requested by <u>Checksmart Financial LLC</u> and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

**Oregon applicants or employees only**: Information describing your rights under federal and Oregon law regarding consumer identity theft protection, the storage and disposal of your credit information, and remedies available should you suspect or find that the Company has not maintained secured records is available to you upon request

**Washington State applicants or employees only**: You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

(ER, at 184, 188, 245, 250.) Below that the surplusage continues:

**Minnesota and Oklahoma applicants or employees only**: Check this box if you woukl1ike to receive a free copy of a consumer report if one is obtained by the Company. □

**New York applicants or employees only**: By signing below, you also acknowledge receipt of Article 23-A of the New York Correction Law.

(ER, at 184, 188, 245, 250.)

Moreover, on page four of the four-page Employment Application packets submitted by Defendants, the document says:

APPLICANT'S CERTIFICATION AND AGREEMENT

CheckSmart Financial, LLC, will check the motor vehicle records of any job applicant where driving is an essential job function and where a rental car must be obtained for business travel purposes. The applicant's job offer is contingent upon this driving record check. The driving record check will Include review of any appropriate state records based on the applicants application and resume. If an applicant has a driving record that

38

meets or exceeds the criteria listed under the Unacceptable Status, the applicant will not be hired. Unacceptable Status: Suspended or revoked license; 3 or more minor moving violations in the past 36 months; 2 or more al-fault accidents within the past 36 months;1 or more major moving / class A violations within the past 36 months; Applicant is unable to provide current, valid driver's license issued by the resident state; Applicant is unable to provide proof of current, in-force personal automobile liability insurance.

I acknowledge and accept that the phrase "the company" In this application refers to CheckSmart Financial, LLC. *I understand that by signing this application I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment, general reputation, educational background, and criminal history. In the event of employment, I understand that false. or misleading information given in my application or interview(s) may result in immediate dismissal*. I understand, also, that I am required to abide by all rules and regulations of the company. I understand and agree that if employed, the employment will be "at will". That is, either I or the company may end the employment relationship at any time, for any reason, or for no reason. I understand that receipt of this application by the company does not imply employment and that this application and/or any other company documents are not contracts of employment.

I, the undersigned, give the company or its contractors, authorization to conduct any criminal, dog and/or alcohol testing it deems necessary la connection with my employment application. I authorize and instruct any person or consumer reporting agency to compile and furnish any information it may have or obtain in response to such inqu1res. I give my consent for the release of test results to authorized company management for review and *I release, remise, and forever discharge the company, its employees, officers, directors and agents from any and all liability, actions or causes of action, of whatever nature, arising as a result of these inquires*. I understand that refusal to sign this consent form or refusal to summit [sic] to testing upon arrival at any contracted facility will eliminate me as a candidate for employment.

(ER, at 187, 191, 248, 253, *boldface italic* emphasis added.)  The first

boldface passage refers expressly to an employment background check.  No

reasonable consumer could believe otherwise, particularly when that same four-page packet refers to background checks on the "Disclosure" page. That same page contains a broad liability release for anything related to "these inquiries," referring again to background checks.

While Defendants argued in their MSJ that Checksmart provided a "one-page standalone" disclosure, its own evidence confirmed that it considered the Employment Application to be a *single*, ***four-page document***.  (ER, at 239-40, at 15:23 – 16:19 (characterizing the Employment Application as one "document" that includes four pages); ER 212, Hawkins Decl., (attaching completed and blank copies of the entire four-page Employment Application [Exhs. 4 and 4(a)], *identified as a single document*).)  Clearly, and as the District Court should have concluded, the average reasonable job applicant would view the language on page four as a reference to the background checks mentioned elsewhere in the Employment Application:

> I understand that by signing this application I am giving my authorization, to an investigation whereby information is obtained regarding my character, previous employment, general reputation, educational background, and criminal history. In the event of employment, I understand that false. or misleading information given in my application or interview(s) may result in immediate dismissal.

(ER, at 187, 191, 248, 253.) And, as noted above, the District Court should have concluded that the improper exculpatory provision at page four of the Employment Application would lead any average reasonable employment applicant to conclude that a release of any claim arising from background checks was part of the four-page, single document:

> I release, remise, and forever discharge the company, its
> employees, officers, directors and agents from any and all
> liability, actions or causes of action, of whatever nature, arising
> as a result of these inquires.

(*Id*.)  Thus, the four-page Employment Application provides clear indicators

that (1) the disclosure on the first page is part of a multi-page Application,

(2) the authorizations demanded span two separate pages (one and four), and

(3) applicants should erroneously conclude that there is no recourse for any

violation in light of the unlawful release language contained in the additional

authorization language (surrounded by extensive surplusage).  (ER, at 184-

187, 188-191, 245-248, 250-243.)

Checksmart also could not deny that the first page of the Employment

Application refers to and incorporates two side documents.  (ER, at 184, 188,

193, 195-197, 245, 250.)  As with the FCRA, discussed above, the reference to

terms in other documents violates the standalone provision under the ICRAA.

Civ. Code § 1786.16(a)(2)(B).  The multiple violations of the ICRAA's

"standalone" disclosure requirement precludes summary adjudication for

Checksmart.

The treatment of the four-page Employment Application and the two

incorporated documents as a single, integrated document is consistent with how

multi-part contracts are construed under California law. Civil Code § 1642

provides that: "Several contracts relating to the same matters, between the same

parties, and made as parts of substantially one transaction, are to be taken

together." Given that both the first and fourth pages purport to contain

agreements relating to background checks (including an unlawful exculpatory

provision), all of the provisions within the four-page Employment Application document need to be read together. Where any part is unlawful, the whole must be viewed as unlawful. Moreover, to the extent that it is even ambiguous as to whether Checksmart's Employment Application, and the language on page four thereof, is intended to indicate a four-page document, that ambiguity is construed against the drafter. Civ. Code § 1654; *Monarch Nut Co., LLC v. Goodnature Prod., Inc.*, No. 1:14-CV-01461 AWI, 2014 WL 6892713, at *1 (E.D. Cal. Dec. 4, 2014). Construing any ambiguity against Checksmart also leads to the conclusion that language on page four of the Employment Application is a continuation of page one and is part of a single document.

Finally, it is beyond dispute that a contract purporting to waive unlawful conduct is void. *Linnastruth v. Mut. Ben. Health & Acc. Ass'n*, 22 Cal. 2d 216, 218 (1943) ("parties may contract as they please so long as they do not violate the law or public policy"); *City of Richmond v. Serv. Employees Int'l Union, Local 1021*, 189 Cal. App. 4th 663, 670 (2010) (recognizing broad principle that "a court may refuse to enforce contracts that violate law or public policy"); *Gombiner v. Swartz*, 167 Cal. App. 4th 1365, 1372 (2008) ("An agreement that violates the law is void and unenforceable."), citing Civil Code §§ 1598, 1599 (both enacted in 1872). Nevertheless, the release language on page four is particularly troubling, since an average reasonable applicant will not be aware that such a release is void where it attempts to agree to waive statutory obligations based on important public policies. As *Syed* concluded:

> Indeed, by reading M-I's Disclosure Release, a job applicant could reasonably conclude that his signature was not consent to the procurement of the consumer report, but to a broad release of the employer from claims arising from the totality of the "investigative background inquiries" referenced in the first sentence of the form.

*Syed*, 853 F.3d at 502. Such improper release language is likely to deter employment applicants from even questioning the sufficiency of the FCRA and ICRAA disclosures, since it suggests that to do so would be futile. The disclosure at issue here presents the very same defect as that discussed in *Syed* and should likewise be found to violate the FCRA and ICRAA.

## V. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT AS TO DEFENDANT CALIFORNIA CHECK CASHING STORES, LLC BECAUSE NO ADMISSIBLE EVIDENCE WAS OFFERED IN SUPPORT OF IT'S MOTION

For Defendant California Check Cashing Stores, LLC ("CCCS") to prevail on a motion for summary judgment, it must support its factual contentions with admissible evidence. *Jackson v. Federal Express*, 766 F.3d 189, 194 (2nd Cir. 2014); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Here, the only source of purported evidence in support of Defendant CCCS's Motion was provided by Declarant Wendy Wright. Ms. Wright declares herself to be the "Vice President of Human Resources of Defendant Checksmart Financial, LLC." (ER, at 199, ¶ 1.) In Paragraphs 2-5, Ms. Wright describes practices at Checksmart and states that she has access to

Checksmart's files. (ER, at 199.) However, in Paragraph 6, with no explanation as to how she would know this information, Wright declares:

> CheckSmart employed Plaintiff during all relevant times. Plaintiff had no employment relationship with California Check Cashing Stores and at no point did CCCS order any form of background or credit report on Plaintiff.

(ER, at 199.) A witness must have personal knowledge concerning the subject matter about which he or she is testifying. Fed. R. Evid. 602. But it is not sufficient if the witness merely states that he or she is "aware" of the subject matter of his or her testimony. *Ward v. First Fed'l Savings Bank*, 173 F.3d 611, 617-618 (7th Cir. 1999) (witness statement that he was "aware" of alleged instruction not to hire African-Americans not sufficient to lay proper foundation). Here, there was zero evidence provided by Defendants as to the relationship between Checksmart and Defendant CCCS, or how Ms. Wright would have been aware of that information if it were provided. Ms. Wright provided no foundation about how she could have been aware of any employer of Plaintiff beyond Checksmart. Because the testimony of a lay witness must be based on what he or she actually observed or perceived through his or her own senses, the witness must have first-hand knowledge acquired by directly perceiving the event that is the subject of his or her testimony. See Fed. R. Evid 602, Adv. Comm. Notes (1972); *United States v. Graham*, 643 F.3d 885, 896-898 (11th Cir. 2011). Ms. Wright failed that test. She did not even offer sufficient information to *infer* that she possessed personal knowledge. *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir.

1994). Her testimony regarding Defendant CCCS should have been disregarded. Without that testimony, there was nothing to support Defendant CCCS's Motion and it should have been denied for that reason.

Next, Ms. Wright attached several documents as Exhibits and declared that each "notes" or "designates" Checksmart as Plaintiff's "sole employer." (ER, at 199-200, ¶¶ 7-9, and ER 204-210 [exhibits 9-11].) Again, Fed. R. Evid. 602 required exclusion of those assertions to the extent offered as to CCCS. No foundation was provided to support her contentions about who employed Plaintiff beyond Checksmart. Moreover, the documents fail to prove the assertion as to CCCS. For example, the w-2 tax form from Checksmart pertains only to wages and other compensation paid by ***Checksmart*** to Plaintiff. (ER, at 210.) The form does not purport to list the identity of all of Plaintiff's legal employers and does not speak to any joint employer liability.

Defendant CCCS failed to offer any evidence supporting the contention that it is not an employer of Plaintiff. By failing to do so, it failed to shift the burden to Plaintiff to establish that employment, and Defendant could not do in Reply what it failed to do in its Motion. The District Court should have denied the Motion as to CCCS for its failure to introduce any competent evidence in support of the Motion.

## VI.   PLAINTIFF DID NOT OPPOSE CHECKSMART'S PARTIAL SUMMARY ADJUDICATION AS TO THE SECOND AND FOURTH CLAIMS FOR RELIEF

As mentioned above, Plaintiff requested pursuant to Rule 56 that the hearing date of Defendants' Motion be moved to allow Plaintiff to depose Defendants on a date within the existing discovery cut-off, after Defendants resisted scheduling that deposition since March.  The District Court denied that relief to Plaintiff. (Dkt. No. 53.)  As a result, Plaintiff was denied the opportunity to present any testimonial admissions by Defendant Checksmart that might have proven relevant as to the Second and Fourth Claims for Relief. Thus, Plaintiff could not provide any admissible evidence that would support denial of Checksmart's Motion as to the Second and Fourth Claims for Relief. Plaintiff believes that ruling by the District Court was erroneous.

Since Defendant CCCS provided zero admissible evidence to support the Motion as to it, the Motion as to Defendant CCCS should have been denied in its entirety; a defendant cannot simply announce that it is moving for summary judgment, offer no competent evidence to support its motion, and then obligate the opposing party to affirmatively prove all elements of all claims to prevent the motion from being granted.

## CONCLUSION

Based upon the above, the District Court's grant of Summary Judgment for Defendants should be reversed.

Dated:  October 18, 2017.          Respectfully submitted,

SETAREH LAW GROUP

By: _____

Shaun Setareh
H. Scott Leviant
Thomas Segal

Attorneys for Plaintiff

**STATEMENT OF RELATED CASES**

Appellant is unaware of any cases related to this action pending in this Court, as related cases are defined in Local Rule 28-2.6.

# CERTIFICATIONS

**Typeface and Size**:      The typeface selected for this Brief is 14-point Times New Roman.  The font used in the preparation of this Brief is proportionately spaced.

**Word Count**:      The word count for this Brief, excluding Table of Contents, Table of Authorities, and the Cover is approximately 11,883 words.  This count was calculated utilizing the word count feature of Microsoft Word 2016.

**Virus Scanning**:      The PDF generated from the Word version of this Petition and Brief was scanned with antivirus software.

Dated:  October 18, 2017.      Respectfully submitted,

SETAREH LAW GROUP

By: _____

Shaun Setareh
H. Scott Leviant
Thomas Segal

Attorneys for Plaintiff

1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 18, 2017.

I certify that, other than any individuals listed below, participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I certify that I caused to be mailed a copy of the electronically filed document to the individuals listed below:

NO MAIL SERVICE REQUIRED

Dated:  October 18, 2017.          Respectfully submitted,

SETAREH LAW GROUP

By: _____
Shaun Setareh
H. Scott Leviant
Thomas Segal

Attorneys for Plaintiff